IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GILBRIANNA WADLEY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 3:23-cv-2587-G-BT |
| META PLATFORMS, INC., | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this removed civil action is Defendant Meta Platforms, Inc. d/b/a Facebook's ("Meta") Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, or in the Alternative for Failure to State a Claim (ECF No. 8). For the reasons explained below, the District Judge should **TRANSFER** this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

**Background**

This case arises out of *pro se* Plaintiff Gilbrianna Wadley's allegations that "Meta Platforms are ignoring harassment complaints" by failing to remove content from third-party profiles in violation of her "14th Amendment rights and privacy rights." *See* Compl. ¶¶ 4, 6 (ECF No. 1-3). As best the Court can ascertain, Wadley requests injunctive relief requiring that Meta remove "unwanted photos and name

1

sharing through Facebook and Instagram" posted by third-party users. *See id.* at ¶¶ 1, 5, 7, 9–11; Resp. (ECF No. 11); Surreply (ECF No. 13).

Wadley alleges that Meta is "ignoring her harassment complaints" while third-party "'finsta' accounts are being used to assist specific relatives with mockery." Compl. ¶ 4. Wadley's request for removal of third-party content is to "prevent damages" to "family relationships," and she requests a temporary injunction that protects the "right to be forgotten" when her name is "typed into any search bar." *Id.* at ¶¶ 7, 9. Wadley also vaguely references her "privacy rights[,]" presumably relating to Wadley's requests "not be loitered or sought after for funeral service photos, death benefits, or to spread past events to [her]," and for the removal of Wadley's image and name from other third-party profiles. *Id.* at ¶¶ 1, 4–5.

Wadley's allegations concerning Facebook are governed by Meta's Terms of Service, which include a provision stating that "any claim, cause of action, or dispute between [Plaintiff and Meta] that arises out or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." *See* Def.'s Ex. A-1 at 9 (ECF No. 9-1).

After removing this case to federal court, Meta filed the pending Motion to Dismiss (ECF No. 8) and Appendix in Support (ECF No. 9), arguing that the Court should dismiss Wadley's claims for lack of personal jurisdiction, improper venue, and failure to state a cognizable claim. Meta also contends that Wadley's claims

should be dismissed on the pleadings because they are barred by the Communications Decency Act, 47 U.S.C. § 230 *et seq.* Mot. Dismiss 9. Wadley filed an untimely Response, and Meta filed its Reply (ECF No. 12). Wadley then filed a Surreply without leave of the Court. The Motion to Dismiss is therefore fully briefed and ripe for determination.

## Legal Standard

1. <u>Dismissal Under Rule 12(b)(3)</u>

"A court typically decides personal jurisdiction questions before considering any venue challenges." *Nuttall v. Juarez*, 984 F. Supp. 2d 637, 642 (N.D. Tex. 2013). But "when there is a sound prudential justification for doing so, a court may reverse the normal order of considering personal jurisdiction and venue." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) (finding that avoiding the unnecessary decision of constitutional questions was a sound prudential justification for deciding venue issues first). Here, resolution of the venue issue may render Meta's personal jurisdiction arguments moot. It is thus appropriate to consider venue as an initial matter. *Nuttall*, 984 F. Supp. 2d at 642.

Federal Rule of Civil Procedure 12(b)(3) states that a party may move to dismiss a case for improper venue. Fed. R. Civ. P. 12(b)(3). The Fifth Circuit has not ruled on which party bears the burden on a Rule 12(b)(3) motion, but "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605

(N.D. Tex. 2017) (citing cases); *see also Floyd v. Kelly Servs., Inc.*, 2019 WL 4452309, at *1 (N.D. Tex. Aug. 30, 2019), *adopted by* 2019 WL 4447538 (N.D. Tex. Sept. 16, 2019). When deciding a Rule 12(b)(3) motion, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). The court may consider evidence in the record beyond the facts alleged in the complaint and its proper attachments. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (citations and internal quotation marks omitted) ("[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"). "Absent an evidentiary hearing on a Rule 12(b)(3) motion, affidavits and other evidence submitted by the non-moving party are viewed in the light most favorable to that party." *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Tex.*, 2017 WL 5593523, at *4 (S.D. Tex. Nov. 17, 2017) (citing *Ambraco*, 570 F.3d at 238).

The general venue statute, 28 U.S.C. § 1391, sets out three categories of proper venue: (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is

4

situated;" and (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)–(3). If, after considering all the evidence, a plaintiff's choice of forum does not fall within one of the Section 1391(b) categories, then "venue is improper, and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 56 (2013). But a case filed in a district that falls within Section 1391 may not be dismissed under Rule 12(b)(3). *Id.*

    2. <u>Transfer Under 28 U.S.C. § 1401(a)</u>

A court has broad discretion to *sua sponte* transfer a case under 28 U.S.C. § 1404(a). *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988). Specifically:

> Section 1404 transfers are authorized "[f]or the convenience of parties and witnesses, in the interest of justice . . . ." Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion.

*Id.* (upholding a *sua sponte* interdistrict transfer); *Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 762 (5th Cir. 1989) (upholding a *sua sponte* transfer to a different division within the same district about 150 miles away). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient

under the terms of § 1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

For the ordinary § 1404(a) motion, the Court makes a threshold inquiry into "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The Court then considers the propriety of transfer based on the convenience of the parties (referred to as the "private interest factors") and various public interest considerations (the so-called "public interest factors"). *Atl. Marine*, 571 U.S. at 63.

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* In determining whether to transfer a case under a forum-selection clause, the Court first determines whether the forum-selection clause is mandatory or permissive. *Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770–71 (5th Cir. 2016). The Court then decides whether the forum-selection clause applies to the dispute at hand, which involves two separate determinations: (1) whether the forum selection clause is valid, and (2) whether the particular case falls within the scope of the forum-selection clause. *Id.* at 770.

The Court then turns to the issue of enforceability. Forum-selection clauses are presumptively valid and should be enforced "unless [the party opposing enforcement] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991) (noting that forum-selection clauses are presumptively valid even absent arm's-length bargaining); *Haynsworth v. The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997).

Ultimately, if the forum selection clause is valid and enforceable, district courts are required "to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63. First, the plaintiff's choice of forum carries no weight. *Id*. Second, the court "must deem the private-interest factors to weigh entirely in favor of the pre-selected forum." *Id*. at 64. That is, the court may consider arguments only about public interest factors. *Id*. Because the public interest factors will rarely defeat a motion to transfer, "forum-selection clauses should control except in unusual cases." *Id*. Third, the transferee venue—that is, the pre-selected forum—will not carry with it the original venue's choice of law rules. *Id*.

**Analysis**

Defendants move to dismiss Wadley's claims under Rule 12(b)(1) for lack of personal jurisdiction over Meta, under Rule 12(b)(3) for improper venue because the Facebook Terms require all disputes to be settled in California, and in the alternative, under Rule 12(b)(6) for failure to state a claim. Although Rule 12(b)(3) is not the proper procedural tool to seek dismissal due to a forum selection clause, the Court agrees that the forum selection provision in the Facebook Terms governs, and recommends that this case be TRANSFERRED to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

7

Because the Court concludes that this case should be transferred, it pretermits consideration of Meta's 12(b)(1) and 12(b)(6) arguments.

Meta does not argue that venue is improper in this district under 28 U.S.C. § 1391; instead, Meta argues that venue is improper because the forum selection clause appearing in the Facebook Terms governs this dispute. Mot. Dismiss 15. According to Meta, the Facebook Terms apply to Wadley's dispute because her claims relate to Meta's right to remove or restrict user content, as well as the access to or use of Meta Products, which includes Facebook. *Id.* And therefore, the mandatory forum selection clause in the Facebook Terms—requiring resolution of disputes "exclusively in the U.S. District Court for the Northern District of California or state court in San Mateo County"—means that venue in this district is improper under Rule 12(b)(3). *Id.* at 14–16. Wadley does not respond to Meta's arguments regarding venue. *See* Resp. 1.

As explained more fully below, the Court agrees that Wadley's claims fall within the Facebook Terms and therefore that the forum selection clause applies. But the proper mechanism for enforcing the forum selection clause is a motion to transfer venue under 28 U.S.C. § 1404(a), not a motion to dismiss for improper venue under Section 1406(a) or Rule 12(b)(3).[1] *Atl. Marine*, 571 U.S. at 55–60.

---

[1] The Supreme Court clarified the procedure available for a defendant in a civil case who seeks to enforce a forum selection clause in *Atlantic Marine*. There, the defendant had moved to dismiss the case, arguing that the mandatory forum selection clause rendered venue in the Western District of Texas "wrong" under Section 1406(a) and "improper" under Rule 12(b)(3). The Supreme Court explained that Rule 12(b)(3) authorizes dismissal "only when venue is 'wrong' or

Meta has not moved to transfer under Section 1404(a); rather, it seeks to enforce the forum selection clause via dismissal under Rule 12(b)(3), which is contrary to the holding in *Atlantic Marine*. Therefore, given the Court's considerable discretion in ordering transfer under Section 1404(a), it will *sua sponte* assess whether this case should be transferred to the parties' contractually selected forum.

In considering whether to transfer a case under Section 1404(a) when, as here, there is a forum selection clause, courts in the Fifth Circuit apply a three-step process. *PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073–74 (5th Cir. 2020). First, courts interpret the forum selection clause to determine whether it is mandatory or permissive, whether it is valid, and whether the parties' dispute falls within the scope of the clause. *Id.* at 1073. Then, if the court concludes that the forum selection clause is mandatory and valid, and that the parties' dispute falls within the scope of the clause, the court determines whether the clause is enforceable. *Weber*, 811 F.3d at 773. There is a strong presumption in favor of the enforcement of mandatory forum selection clauses. *Id.* Finally, if the court finds

---

'improper' in the forum in which it was brought." *Id.* at 55. And "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)," the statute governing whether venue is wrong or improper. *Id.* at 56 (internal quotations omitted). Instead, "although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59.

that the forum selection clause is enforceable, it must evaluate whether "extraordinary circumstances" weigh against transfer. *Atl. Marine*, 571 U.S. at 63.

      The Court begins the analysis with interpreting the forum selection clause and determining whether it is enforceable. First, the forum selection clause in the Facebook Terms is mandatory. A mandatory forum selection clause is one that "contains clear language specifying that litigation must occur in the specified forum." *Weber*, 811 F.3d at 769. The provision in the Facebook Terms states clearly that "any claim, cause of action, or dispute" arising from the Terms "*shall* be resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Def.'s Ex. A-1 at 9 (emphasis added). This language affirmatively requires that litigation relating to the Facebook Terms be carried out in the specified venues. Therefore, the clause is mandatory. *See Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *10 (E.D. Tex. July 20, 2023). This dispute also falls within the scope of the Facebook Terms. Wadley's claim arises out of Meta's alleged failure to remove third-party content from Facebook, which directly relates to Meta's ability to "remove or restrict access to content." *See* Def.'s Ex. A-1 at 7. The dispute therefore "arises out of or relates to these Terms." *Id.* at 9. And the forum selection clause in the Facebook Terms is valid and enforceable, as courts in this District, other districts within the Fifth Circuit, and elsewhere have routinely agreed. *See Wise Guys I v. Meta Platforms, Inc.*, 2023 WL 8434452, at *2–3 (N.D. Tex. Dec. 4, 2023); *Davis*, 2023 WL

10

4670491, at *10; *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018).

Under *Atlantic Marine*, a mandatory forum selection clause should be given controlling weight in all but the most exceptional cases. *Atl. Marine*, 571 U.S. at 63. The Court will briefly assess the public interest factors to determine whether they present "extraordinary circumstances" that weigh heavily against transfer of this case to the parties' agreed forum. The first factor, the comparative administrative difficulties due to court congestion in the potential venues, is neutral. While the Northern District of California is bigger than this district and more cases are filed there, the median time intervals from filing to disposition of civil cases is longer in the Northern District of Texas, indicating higher levels of court congestion. *See* Federal Judicial Caseload Statistics, Table C-5—U.S. District Courts–Civil Federal Judicial Caseload Statistics (March 31, 2023), https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2023/03/31. The second public interest factor evaluates the local interest in the dispute, which generally favors the venue where the acts giving rise to the lawsuit occurred. *See Van Rooyen v. Greystone Home Builders, LLC*, 295 F.Supp.3d 735, 748 (N.D. Tex. 2018) (Fitzwater, J.). Here, Wadley is an individual residing in this district. *See* Compl. ¶ 2. Texas has a localized interest in a case involving a Texas plaintiff alleging that she has suffered harm in this state—but California also has an interest in adjudicating a case involving Meta, given that

11

Meta is headquartered in California. *See id.*; *Davis*, 2023 WL 4670491, at *10. This factor is neutral.

The remaining two public interest factors weigh in favor of transfer. There is no indication that California federal courts are more familiar with the constitutional law issues Wadley raises in her Complaint than Texas federal courts, or vice versa. And finally, this case will not raise unnecessary problems of conflicts of laws or the application of foreign law.

Therefore, the Court concludes that the forum selection clause in the Facebook Terms, which represents the parties' agreement to litigate these claims exclusively in California, should be given controlling weight and that this case should be transferred to the United States District Court for the Northern District of California as a result. *See Atl. Marine*, 571 U.S. at 63; *Davis*, 2023 WL 4670491, at *10.

## Recommendation

For the reasons explained above, the Court should **TRANSFER** this case to the United States District Court for the Northern District of California.

**SO RECOMMENDED.**

July 10, 2024.

                                                  REBECCA RUTHERFORD
                                                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).